# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

[UNDER SEAL],

      Plaintiffs,

v.

[UNDER SEAL],

      Defendants.

Civil Action, File No. _____



CV17-03263-PA(JCx)

> **Filed *in Camera* pursuant to
> 31 U.S.C. § 3730(b)(2)**

Filed 2017 MAY -1 PM 3:02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

COMPLAINT FOR DAMAGES
under 31 U.S.C. § 3730 and
Gov't Code §§ 12560, et seq.

FALSE CLAIMS ACT

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES UNDER 31 U.S.C. § 3730
## FALSE CLAIMS ACT

Louis J. Cohen
California Bar Number: 123968
Louis J. Cohen, a Professional Corporation
28720 Roadside Drive, Suite 273
Agoura Hills, CA  91301
Telephone: 818.889.5557
Facsimile:  818.991.6999
louiscohen@msn.com

Attorney for Plaintiff/Relator



PAID

MAY - 1 2017

Clerk, US District Court
COURT 4612

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| United States of America *ex. rel.* M. Lakhani, State of California *ex rel.* M. Lakhani, and M. Lakhani,<br><br>        Plaintiffs/Relator,<br><br>      v.<br><br>Vinod K. Gupta, M.D., The Heart Center of Southern California, Inc.,<br><br>        Defendants. | Civil Action, File No. _____<br><br>**Filed *In Camera* pursuant to 31 U.S.C. § 3730(b)(2)**<br><br>COMPLAINT FOR DAMAGES under 31 U.S.C. § 3730 and Gov't Code § 12560, *et seq.*<br><br>FALSE CLAIMS ACT<br><br>JURY TRIAL DEMANDED |

---

## COMPLAINT FOR DAMAGES UNDER 31 U.S.C. § 3730 AND Gov't Code § 12560, *et seq.*
### FALSE CLAIMS ACT

---

Louis J. Cohen
California Bar Number: 123968
Louis J. Cohen, a Prof. Corp.
28720 Roadside Drive, Suite 273
Agoura Hills, CA 91301
Telephone: 818.889.5557
Facsimile: 818.991.6999
louiscohen@msn.com

Attorney for Plaintiff Relator M. Lakhani

Plaintiffs United States of America *ex rel.* M. Lakhani, State of California *ex rel.* M. Lakhani, and Plaintiff Relator M. Lakhani, through his attorney, Louis J. Cohen, a Professional Corporation, by Louis J. Cohen, complain and allege as follows:

## COMPLAINT

1.  This is a *qui tam* action by Plaintiff M. LAKHANI ("Relator" or "Plaintiff"), for himself and on behalf of the United States of America (the "United States" or "Government") and the State of California ("State") to recover damages, civil penalties and for other remedies arising from Defendants' actions in violating the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* and the California False Claims Act ("CFCA"), *Gov't Code* § 12650 *et seq.*

## JURISDICTION AND VENUE

2.  This action arises under the FCA, 31 U.S.C. § 3729 *et seq.* and the CFCA, *Gov't Code* §12650 *et seq.*

3.  Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, in that Count I of this action arises under the laws of the United States. Supplemental jurisdiction over Count II arises under 31 U.S.C. § 3732(b), since that Count arises from the same transactions or occurrences as Count I, and under 28 U.S.C. § 1367, since that Count is so related to the federal claims that they form part of the same case or controversy.

4.  Venue is proper in this district under 31 U.S.C. § 3732(a). Each of the Defendants can be found, resides, or transacts business within the district, and many of the acts forming the basis of this action occurred within the district.

## THE PARTIES AND RELATED ENTITIES

5.  Plaintiff M. LAKHANI is a healthcare professional. Prior to the filing of this action, Relator has provided the Government, as required by 31 U.S.C. § 3730(e)(4)(B), and the State, the information on which the allegations herein are based.

6.  Relator through first-hand knowledge and investigation has gained knowledge of the practices set forth herein.

7.    Defendant Vinod K. Gupta, M.D. ("Dr. Gupta" or "Defendant") is a cardiologist, board certified in Internal Medicine, licensed to practice in California since May 8, 1978, and assigned license number 32271.

8.    The Heart Center of Southern California, Inc. ("HCSC") is an active California professional medical corporation incorporated in or about November 27, 2002. Dr. Vinod K. Gupta is the President, CEO, owner and Managing Director of HCSC and is identified as the agent for service of process.

9.    Upon information and belief, at all times relevant hereto Dr. Gupta and HCSC acted as alter egos. Dr. Gupta was the alter ego of HCSC because there existed at all times mentioned herein a unity of interest and ownership between Dr. Gupta and HCSC such that any individuality and separateness between them ceased to exist.  Dr. Gupta was the alter ego of HCSC because Dr. Gupta (i) dominated and controlled the activities of HCSC and (ii) used HCSC for his own personal benefit and gain. Further, HCSC was inadequately capitalized and underinsured. Therefore, to recognize the distinction or separateness between Dr. Gupta on the one hand and HCSC on the other hand, would promote fraud and sanction injustice.

## FACTUAL ALLEGATIONS

10.    At times relevant herein, Dr. Gupta and HCSC maintained two offices. The Simi Valley office was located at 2876 Sycamore Drive, Suite 201, Simi Valley, CA 93065 ("Simi Valley Office"). The Thousand Oaks office was located at 2190 Lynn Road, Suite 330, Thousand Oaks, California 91360 ("Thousand Oaks Office").

11.    Dr. Gupta and HCSC and its physicians routinely submitted false claims to Medicare and Medi-Cal for (i) medically unnecessary myocardial perfusion imaging studies, at both rest and stress, including Nuclear Stress Tests, echocardiograms, stress echocardiograms, and carotid ultrasounds; (ii) medically unnecessary therapeutic interventions, including enhanced external counter pulsation ("EECP"); and (iii) medically unnecessary diagnostic studies, including Holter monitors and cardiac bio-impedance.

12.    For the last ten years Dr. Gupta and his affiliated physicians have ordered and performed thousands of serial (every 366 days) medically unnecessary nuclear stress tests

("NST(s)") on Medicare and Medi-Cal patients.

13.  Virtually every Medicare and Medi-Cal patient received NSTs on an annual basis. There was absolutely no indication for the NSTs except the passage of time.

14.  In the same medical practice, virtually no HMO patients received NSTs.  HMO patients, even those with severe physical limitations, were almost always required to undergo treadmill stress tests, which are equally accurate but much less profitable than NSTs.

15.  Performing unnecessary annual NSTs simply based on the passage of time *causes patient harm and compromises patient safety by exposing patients to high doses of radiation and increased cancer risk*. Each NST is accompanied by the administration of Technetium Tc 99m a radiopharmaceutical. Radiopharmaceuticals are radioactive agents, which may be used to study the function of the body's organs.

16.  Each NST exposes a patient to the equivalent of 750 chest x-rays and 15 milliSieverts (mSv) of radiation.  (http://m.eurheartj.oxfordjournals.org/content/35/10/665.short)

17.  The Appropriate Use Criteria ("AUC") published by the American College of Cardiology Foundation ("ACC") and the American Heart Association ("AHA") confirm that an NST is "inappropriate" in stable patients when the previous one has performed less than two years ago.  Even such testing in patients with intermediate to high coronary heart disease risk is "inappropriate."

18.  Dr. Gupta or another physician in his practice frequently failed to be present in the office when stress echocardiograms and NSTs were performed in violation of the Medicare and Medi-Cal supervision requirements.

19.  Dr. Gupta up-coded medical visits for higher reimbursement; failed to spend the required face-to-face time with patients commensurate with the level of visit (instead spending two to five minutes with each patient); and failed to adequately document or chart patients' conditions to justify the services and level of billing.

20.  Dr. Gupta bills essentially every New Patient visit as a Level 5 and essentially every follow up visit as a Level 4. Such levels of billing would be appropriate for a cardiologist that spends the required face to face time, evaluated the required number of systems during such visit,

and performed the requisite complexity of medical decision-making.

21.    A Level 4 visit, CPT 99214, generally requires a detailed history and examination of 5 to 7 systems and 25 minutes face to face time. A Level 5 new patient visit generally requires a comprehensive history, examination of 8 or more systems and 60 minutes face to face time.

22.    Dr. Gupta spent 2 to 5 minutes with every patient. Dr. Gupta's chart notes failed to reflect that he had examined the required number of systems or performed the requisite complexity of medical decision-making.

23.    For example, Dr. Gupta's handwritten chart note for Medicare and Medi-Cal patients under the headings "impression" and "recommendations" contained literally only three words: "CAD" "Continue Same."

24.    Dr. Gupta diagnosed virtually every patient with "CAD" including patients who did not have CAD.

25.    When Dr. Gupta implemented electronic health records ("EHR") in late 2012 he and his office manager directed his medical assistant to bill every follow-up visit as a Level 4 visit. To follow this direction the medical assistant who was not present during the patient examination or informed of its results/findings was required to simply keep checking boxes in the EHR system until the visit coded at CPT 99214 which is a Level 4 office follow-up.

26.    HCSC and Dr. Gupta directed that Medicare and Medi-Cal patients receive the following diagnostic and imaging studies and treatment, contrary to ACC guidelines:

1.   A NST, prescribed at initial visit and every 366 days thereafter;

2.   An echocardiogram, performed at initial visit and at least every 366 days thereafter;

3.   A Holter monitor, prescribed and dispensed at initial visit and at least every 366 days thereafter;

4.   A cardiac bio-impedance monitor, performed at initial visit and usually every 366 days thereafter;

5.   EECP, prescribed at initial visit for 12 sessions, and in some instances thereafter; and,

6.   Carotid ultrasound, performed at initial visit, and every 366 days thereafter.

27.  HCSC and Dr. Gupta directed that HMO patients receive the following diagnostic and imaging studies:

1.  A treadmill stress echocardiogram if clinically indicated;  and

2.  A Holter monitor if indicated.

28.  An echocardiogram is medically necessary to diagnose structural heart disease and for the surveillance of moderate to severe valvular lesions.  Common indications to perform an echocardiogram would include a change in cardiovascular examination status (i.e., heart murmur getting worse) or worsening of symptoms (i.e., increased dyspnea).

29.  The studies identified in paragraph 26 were ordered for all Medicare and Medi-Cal patients initially and at least annually thereafter simply based on the passage of time without clinical justification or documentation.

30.  Carotid ultrasound is an ultrasound of the internal and external carotid arteries. Images can help assess the extent of plaque burden and future risk of stroke.  Common indications to perform this study include diagnosing and confirming the severity of carotid artery disease based on initial examination or the patient's presenting pathological state such as a stroke.

31.  These studies were ordered for *all* Medicare patients initially and *at least annually* thereafter simply based on the passage of time without clinical justification or documentation.

32.  These studies were ordered for HMO patients on the initial visit *only if clinically indicated* and were *almost never repeated*.

33.  A Holter monitor is a mobile device worn by the patient to monitor and record a patient's cardiac rhythm for an extended period of time, at least 24 hours.  The study is indicated when the physician believes that the patient's presenting symptoms are likely attributable to a cardiac arrhythmia.  Occasionally it may be also used to guide treatment once a diagnosis of arrhythmia has been made.  It is exceptionally rare to repeat this study annually.

34.  These studies were ordered for *all* Medicare patients initially and *at least annually* thereafter simply based on the passage of time without clinical justification or documentation.

35.  These studies were ordered for HMO patients on the initial visit *only if clinically indicated* and were *almost never repeated*.

36. EECP is a nonsurgical mechanical procedure (long inflatable cuffs that wrap around the patient's legs) that in theory can reduce the symptoms of angina pectoris by increasing coronary blood flow in areas of the heart that lack blood flow.

37. In modern practice it is used only for patients whose angina is refractory to pharmacological and revascularization (either surgical bypass or stents). As such, the patient population where this modality is indicated is remarkably small. Due to the effectiveness of medication and intervention, most cardiac practices, including university and academic facilities, do not utilize or possess this medical equipment.

38. Many experts have described this treatment modality as highly questionable. (See article entitled "Is EECP Really Quackery As the WSJ Implies?" "The 141 cardiologists at the Cleveland Clinic...performed it on only six patients last year." (https://www.verywell.com/is-eecp-really-quackery-as-the-wsj-implies-1745823))

39. This treatment was ordered for *all* Medicare patients initially, even patients without angina. This treatment continued as long as Medicare would pay for it.

40. This treatment was never ordered for HMO patients.

41. Cardiac bio-impedance is a diagnostic device that gives additional data on a patient's hemodynamics such as cardiac output and systemic vascular resistance. The data from this device adds no meaningful additional data than that which could be obtained from a physical examination and an EKG.

42. Because of its limited utility this equipment is rarely carried or prescribed by most practicing cardiologists. There is no true clinical indication for this test as a standalone.

43. This diagnostic test was ordered for *all* Medicare patients initially, with any cardiac diagnosis or complaint. This test was repeatedly annually. This treatment was never ordered for HMO patients.

44. Excerpts of Medicare patient's charts confirm that NSTs were performed nearly annually or sooner with no documentation in the chart to justify these serial NSTs.

The following table illustrates the precise dates NSTs were performed on four Medicare patients:

| Patient Name | Date NST was performed |
|---|---|
| Patient A | May 7, 2008 |
| | May 14, 2009 |
| | August 12, 2010 |
| | September 2, 2011 |
| Patient B | February 25, 2008 |
| | February 18, 2009 |
| | January 31, 2011 |
| | August 8, 2012 |
| Patient C | August 29, 2006 |
| | May 3, 2007 |
| | January 7, 2008 |
| | August 4, 2009 |
| Patient D | June 3, 2010 |
| | May 31, 2011 |
| | March 29, 2012 |

45.  Chart notes for these patients for numerous Level 4 visits establish an absence of documentation demonstrating changing symptoms or conditions to justify repeat cardiac imaging.

46.  Medicare is a federally-funded health insurance program which provides for certain medical expenses for persons who are over 65, who are disabled, or who suffer from End Stage Renal Disease.

47.   The Medicare program has four parts: Part A, Part B, Part C and Part D. Medicare Part A, the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care.

48.   Medicare Part B, The Voluntary Supplemental Insurance Plan, covers the cost of services performed by physicians and certain other health care providers, both inpatient and outpatient, if the services are medically necessary and directly and personally provided by the provider. Medicare Part C covers certain managed care plans and, Medicare Part D provides subsidized prescription drug coverage for Medicare beneficiaries.

49.   The Medicare program is administered through the Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS").

50.   Medicare coverage is limited to those items and services which are reasonable and medically necessary. 42 U.S.C. § 1395y(a)(1). Health Care Practitioners and providers are required to insure that all services are "provided economically and only when, and to the extent, medically necessary." 42 U.S.C. § 1320c-5(a)(1),(3). Providers who furnish services or items substantially in excess of the needs of their patients may be excluded from participation in federal health care programs altogether. 42 U.S.C. §1320a-7(b)(6).

51.   Participating providers are also required to ensure that all services are "of a quality that meets professionally recognized standards of care." 42 U.S.C. § 1320c-5(a)(2).

52.   Under Medicare Part B, "Medicare carriers" are responsible for accepting and paying claims for certain reimbursements under Medicare Part B.

53.   Under Part B, the physician typically submits a bill using Form CMS-1500. On the claim form, the physician certifies that the services were "medically indicated and necessary to the health of the patient."

54.   In addition, each provider must sign a provider agreement as a condition of participation that agrees to comply with all Medicare requirements including the fraud and abuse provisions. A provider who fails to comply with these statutes and regulations is not entitled to payment for services rendered to Medicare patients.

55.  By submitting a claim for Medicare reimbursement, the provider certifies that the submitted claim is eligible for Medicare reimbursement and that the provider is in compliance with all Medicare requirements.

56.  Medicaid is a public assistance program providing for payment of medical expenses for low-income and disabled patients. Funding for Medicaid is shared between the federal government and those states participating in the program. Although Medicaid is administered on a state-by-state basis, the state programs adhere to federal guidelines.

57.  Medi-Cal is what the federal Medicaid program is called in California. References to Medicaid herein refer also to Medi-Cal. Each physician that participates in the Medicaid program must sign a Medical provider agreement with his or her state. The California Department of Health Care Services Provider Enrollment Application requires any perspective Medicaid provider to certify that he or she will comply with all of the Department's Medicaid requirements, which incorporate the Federal fraud and abuse provisions.

58.  Like Medicare, Medicaid and other federal health care programs require, as a condition of coverage, that services be medically necessary and of a quality that meets professionally recognized standards of care. 42 U.S.C. §1320c-5(a).

59.  The California Medicaid state plan also limits coverage to medically necessary procedures.

## COUNT I

(Violation of Statute – False Claims Act- 31 U.S.C. § 3729 *et seq.*

Against All Defendants)

60.  The allegations in the preceding paragraphs are incorporated by reference.

61.  This is a claim by **Relator**, on behalf of the **United States**, for treble damages and penalties under the FCA, 31 U.S.C. §3729(a)(1)(A).

62.  Defendants submitted or caused to be submitted requests for payment to Medicare, and Medicaid for diagnostic tests, medical equipment and professional services which were not reasonable and not medically necessary.  As a result, Defendants knowingly caused false claims for payment to be submitted to and paid by agencies of the United States, including CMS.

63.    By virtue of the misrepresentations and submissions of non-eligible claims described above, Defendants knowingly presented or caused to be presented to an officer or employee of the United States false or fraudulent Medicare or Medicaid claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), as amended by 31 U.S.C. § 3729(a)(1)(A).

64.    By their fraudulent concealment, misrepresentations, falsification, and submission of ineligible claims described above, Defendants knowingly presented, or caused to be presented false or fraudulent claims capable of influencing the government's decision to pay, for improper payment or approval.

65.    The United States, unaware of the falsity of fraudulent nature of Defendants' claims, paid the claims.

66.    The United States has been damaged by all of the above misrepresentations and schemes to violate the requisite agreements and regulations in an amount which is yet to be determined.   With respect to the said misrepresentations and failures to comply, Defendants knowingly made or caused to be made false claims to officials of the United States for the purpose of obtaining compensation.

67.    Defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* in that they:

(1)    knowingly presented or caused to be presented numerous false claims for payment or approval;

(2)    knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, and to get false or fraudulent claims paid or approved;

(3)    knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government;

(4)    knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and

(5)    conspired to commit the above acts, and to defraud the government by getting false or fraudulent claims allowed or paid.

68.    As a result of Defendants' violations of 31 U.S.C. § 3729, *et seq.* the United States has suffered damages in an amount to be determined at trial.

## COUNT II

(Violation of Statute – California False Claims Act- *Government Code* § 12650 *et seq.*

Against All Defendants)

69.    The allegations in the preceding paragraphs are incorporated by reference.

70.    This is a claim for treble damages and civil penalties under the California False Claims Act ("CFCA") Cal. Gov't Code § 12650-56.

71.    Defendants submitted or caused to be submitted requests for payment to Medicaid for diagnostic tests, medical equipment and professional services which were not reasonable and not medically necessary.    As a result, Defendants knowingly caused false claims for payment to be submitted to and paid by agencies of the State of California, and agencies of the United States.

72.    By virtue of misrepresentations and the causing of submissions of ineligible claims described above, Defendants knowingly presented or caused to be presented to the State of California, Medicaid and Medi-Cal false or fraudulent claims for payment or approval; and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

73.    The State of California, Medicaid and Medi-Cal, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

74.    By reason of these payments, the State of California, Medicaid and Medi-Cal have been damaged, and continue to be damaged in a substantial amount.

75.    Defendants violated the California False Claims Act, *Government Code* § 12650 *et seq.* in that they:

(1)    knowingly presented or caused to be presented numerous false claims for payment or approval;

(2)    knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims;

(3)    knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the State, or to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State;

(4)    knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State; and

(5)    conspired to commit the above acts, and to defraud the State by getting false or fraudulent claims allowed or paid.

76.    As a result of Defendants' violations of *Government Code* § 12650, *et seq.*, the State has suffered damages in an amount to be determined at trial.

WHEREFORE, Relator, on behalf of himself, the United States and the State of California, pray:

(a)    That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 committed on or before November 1, 2015; and not less than $10,781 and not more than $21,563 for each violation of 31 U.S.C. § 3729 committed after November 2, 2015 pursuant to §3729 (a)(1) and 28 C.F.R. § 85.5 (effective August 1, 2016), or as may be further adjusted;

(b)    That as to Count I Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim if the United States intervenes, and not less than 25

percent nor more than 30 percent of the proceeds of the action or settlement of the claim if the United States does not intervene;

(c)   That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the state of California has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500 and not more than $11,000 for each violation of CFCA, Cal. Gov't Code §§ 12650-56.

(d)   That as to Count II Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be at least 15 percent but not more than 33 percent of the proceeds of the action or settlement of the claim if the State intervenes, and not less than 25 percent nor more than 50 percent of the proceeds of the action or settlement of the claim if the State does not intervene;

(e)   That Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

(f)   That Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to Cal. Gov't Code § 12652;  and

(g)   That the Court order such other relief as is appropriate.

## Demand for Jury Trial

Please take notice that the Relator demands this action to be tried to a 12-person jury.

Dated:  May 1, 2017                    Respectfully submitted,

LOUIS J. COHEN,
A Professional Corporation

By _____
LOUIS J. COHEN
louiscohen@msn.com
Attorney for Plaintiff UNITED STATES OF AMERICA,
*ex rel.* M. LAKHANI, STATE OF CALIFORNIA *ex rel.*
M. LAKHANI and M. LAKHANI
Page 15 of 15

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| UNITED STATES OF AMERICA ex rel. M. LAKHANI, STATE OF CALIFORNIA ex rel. M. LAKHANI, and M. LAKHANI | VINOD K. GUPTA, M.D.; THE HEART CENTER OF SOUTHERN CALIFORNIA, INC. |

| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant    Ventura (IN U.S. PLAINTIFF CASES ONLY) |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Louis J. Cohen, a Professional Corporation 28720 Roadside Drive, Suite 273 Agoura Hills, CA 91301 Tel. (818) 889-5777 | |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multidistrict Litigation - Transfer
☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    **MONEY DEMANDED IN COMPLAINT:** $ _____

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

False Claims Act, 31 USC 3729 et seq. - Action for damages and injunctive relief pursuant to the federal False Claims Act and California False Claims Act, Gov't Code 12650-56

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☒ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

CV17-03263

| FOR OFFICE USE ONLY: | Case Number: | | |
|---|---|---|---|
| CV-71 (07/16) | | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Orange | Southern |
|  | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| [X] Yes  [ ] No | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [X] NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [X] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| [ ] Yes  [X] No | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western ▼ |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [X] Yes  [ ] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?
☒ NO    ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**    Louis J. Cohen    _Louis J. Cohen_    DATE: May 1, 2017

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |